**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
————————————————————————————————

SARAH C.,

                                        Plaintiff,

            v.                                              5:19-CV-1431
                                                              (FJS)
COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
————————————————————————————————

**APPEARANCES**                               **OF COUNSEL**

**LAW OFFICES OF KENNETH HILLER, PLLC**      **JUSTIN M. GOLDSTEIN, ESQ.**
6000 North Bailey Avenue, Suite 1A            **KENNETH R. HILLER, ESQ.**
Amherst, New York 14226
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**            **LUIS PERE, ESQ.**
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203
Attorneys for Defendant

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    Plaintiff brought this action pursuant to the Social Security Act, 42 U.S.C. § 405(g) (the

"Act"), seeking judicial review of a final decision of the Commissioner of Social Security,

denying her concurrent application for Supplemental Security Income and Disability Insurance

benefits.  *See generally* Dkt. Nos. 1, 8.  Pending before the Court are the parties' cross-motions

for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

*See* Dkt. Nos. 8, 9.

## II. PROCEDURAL HISTORY AND BACKGROUND

On February 26, 2016, Plaintiff protectively filed a Title II claim for a period of disability and disability insurance benefits and a Title XVI claim for supplemental security income. In both applications, Plaintiff alleged a disability onset date of October 28, 2015. *See id.* After her claims were initially denied, she timely requested a hearing before an Administrative Law Judge.

Plaintiff appeared and testified at a hearing before Administrative Law Judge ("ALJ") Jennifer Gale Smith, in Syracuse, New York, on September 27, 2018. Counsel represented Plaintiff at the hearing, and Robert Baker, an impartial vocational expert, also appeared at the hearing.

On October 4, 2018, the ALJ issued a written decision in which she made the following findings "[a]fter careful consideration of the entire record,"

> (1)"[Plaintiff] has not engaged in substantial gainful activity since October 28, 2015, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*)."
>
> (2) "[Plaintiff] has the following severe impairments: post-concussion syndrome, sarcoidosis, asthma, spondyloarthropathy, obesity, depression, anxiety and PTSD (20 CFR 404.1520(c) and 416.920(c))."
>
> (3) "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)."
>
> (4) "After careful consideration of the entire record, [I] find[] that [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she should not balance, kneel, crouch, crawl or climb ladders/ropes/scaffolds. [Plaintiff] can occasionally stoop and climb stairs/ramps. [Plaintiff] should have the opportunity to change positions every thirty minutes, but she can remain on task while doing so. [Plaintiff] can frequently reach, handle, finger and feel. She should have no more than occasional exposure to

respiratory irritants such as dust, odors, fumes, gases and temperature extremes.  [Plaintiff] is limited to simple, routine and repetitive tasks.  She should work at a low-stress job, defined as occasional decision-making, judgment required and changes in work setting.  She should perform goal-oriented work rather than production pace rate work.  [Plaintiff] should have no more than occasional contact with supervisors, coworkers and the public."

(5) "[Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965)."

(6) "[Plaintiff] was born on February 26, 1981 and was 34 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963)."

(7) "[Plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964)."

(8) "Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not disabled,' whether or not [Plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2)."

(9) "Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a)."

(10) "[Plaintiff] has not been under a disability, as defined in the Social Security Act, from October 18, 2015, through the date of this decision (20 CFR 404.1520(g) and 416.920(g))."

*See* Dkt. No. 6, Administrative Record ("AR"), at 102-09.[1]

The ALJ's decision became the Commissioner's final decision on September 22, 2019,

when the Appeals Council of the Social Security Administration denied Plaintiff's request for

review.  *See* AR at 1-7.  Plaintiff then commenced this action on November 19, 2019, and filed a

---

[1] All references to page numbers in the Administrative Record are to the Bate Stamp numbers, which are located at the bottom right hand corner of the pages.  All references to page numbers in the parties' submissions are to the page numbers that the Court's Electronic Case Filing System generates, which are located at the top right corner of those pages.

supporting brief on March 28, 2020.  *See* Dkt. Nos. 1, 8.  Defendant filed a responsive brief on

May 8, 2020.  *See* Dkt. No. 9.

## III. DISCUSSION

### A.     Standard of review

Absent legal error, a court will uphold the Commissioner's final determination if there is

substantial evidence to support it.  *See* 42 U.S.C. § 405(g).  The Supreme Court has defined

substantial evidence to mean "'more than a mere scintilla'" of evidence and "'such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971) (quotation omitted).  When reviewing a denial of disability

benefits, a court may not determine *de novo* whether an individual is disabled.  *See*  42 U.S.C.

§ 405(g).  Rather, a court will reverse the Commissioner's determination only if he did not apply

the correct legal standards or there is not substantial evidence in the record to support that

determination.

"To determine on appeal whether the ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts

from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If the Commissioner's

finding is supported by substantial evidence, the court must sustain it "even where substantial

evidence may support the plaintiff's position and despite that the court's independent analysis of

the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153

(S.D.N.Y. 1992).  In sum, a reviewing court must accord considerable deference to the ALJ's

determination and may not substitute "its own judgment for that of the ALJ, even if it might

justifiably have reached a different result upon *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

To be eligible for benefits, a claimant must show that she suffers from a disability within the meaning of the Act.  The Act defines "disability" as an inability "to engage in any substantial gainful activity [("SGA")] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  To determine if a claimant has sustained a disability within the meaning of the Act, the ALJ follows a five-step process:

> (1) The ALJ first determines whether the claimant is currently engaged in SGA.  *See* 20 C.F.R. §§ 416.920(b), 416.972.  If so, the claimant is not disabled.  *See* 20 C.F.R. § 416.920(b).
>
> (2) If the claimant is not currently engaged in SGA, the ALJ determines if the claimant has a severe impairment or combination of impairments.  *See* 20 C.F.R. § 416.920(c).  If not, the claimant is not disabled.  *See id.*
>
> (3) If the claimant has a severe impairment, the ALJ determines if the impairment meets or equals an impairment found in the appendix to the regulations (the "Listings").  If so, the claimant is disabled.  *See* 20 C.F.R. § 416.920(d).
>
> (4) If the impairment does not meet the requirements of the Listings, the ALJ determines if the claimant can do her past relevant work.  *See* 20 C.F.R. § 416.920(e), (f).  If so, she is not disabled.  *See* 20 C.F.R. § 416.920(f).
>
> (5) If the claimant cannot perform her past relevant work, the ALJ determines if she can perform other work, in light of her residual functional capacity ("RFC"), age, education, and experience.  *See* 20 C.F.R. § 416.920(f), (g).  If so, then she is not disabled.  *See* 20 C.F.R. § 416.920(g).  A claimant is only entitled to receive benefits if she cannot perform any alternative gainful activity.  *See id.*

For this test, the burden of proof is on the claimant for the first four steps and on the

Commissioner for the fifth step, if the analysis proceeds that far.  *See Balsamo v. Chater*, 142

F.3d 75, 80 (2d Cir. 1998) (quotation and other citations omitted).


**B.    ALJ's Residual Functional Capacity ("RFC") finding**

As noted, the ALJ's findings regarding Plaintiff's residual functional capacity are as

follow:

> [Plaintiff] has the residual functional capacity to perform sedentary
> work as defined in 20 CFR 404.1567(a) and 416.967(a) except she
> should not balance, kneel, crouch, crawl or climb
> ladders/ropes/scaffolds.  [Plaintiff] can occasionally stoop and
> climb stairs/ramps.  [Plaintiff] should have the opportunity to
> change positions every thirty minutes, but she can remain on task
> while doing so.  [Plaintiff] can frequently reach, handle, finger and
> feel.  She should have no more than occasional exposure to
> respiratory irritants such as dust, odors, fumes, gases and
> temperature extremes.  [Plaintiff] is limited to simple, routine and
> repetitive tasks.  She should work at a low-stress job, defined as
> occasional decision-making, judgment required and changes in
> work setting.  She should perform goal-oriented work rather than
> production pace rate work.  [Plaintiff] should have no more than
> occasional contact with supervisors, coworkers and the public.

*See* AR at 105.

In reaching her RFC finding, the ALJ first set forth the two-step process that ALJs must

follow to evaluate a claimant's symptoms.  *See id.* at 105-06.  The ALJ then stated that her RFC

finding was based on the opinions of Dr. Elke Lorensen, M.D., a consultative examiner, and Dr.

T. Inman-Dundon, Psy.D., a psychological consultant.  *See id.* at 106.

With regard to Dr. Lorensen's opinion, the ALJ discussed the fact that the only limitation

Dr. Lorensen indicated Plaintiff had was that she should avoid smoke, dust, and other respiratory

irritants, which was based on an examination of Plaintiff.  *See id.*  The ALJ noted that this

examination yielded all normal findings as to Plaintiff's gait, ability to rise from a chair, senses,

range of motion, and extremity strength.  *See id.*  The ALJ found this opinion generally

consistent with records of Plaintiff's intermittent asthma, records showing a lack of Plaintiff's

sarcoidosis symptoms, and records showing improvement in Plaintiff's spondyloarthropathy with

medication.  *See id.*  The ALJ also noted that Dr. Lorensen examined Plaintiff and had

professional expertise.  *See id.*  As such, the ALJ gave the opinion great weight.  *See id.*

The ALJ also discussed Dr. Inman-Dundon's opinion, which indicated that Plaintiff could

perform unskilled work.  *See id.*  The ALJ noted that Dr. Inman-Dundon cited the consultative

examiner's findings and Plaintiff's ability to cook, clean, shop, manage money, and get along

with others.  *See id.*  The ALJ also cited the fact that Dr. Inman-Dundon had the chance to

review the record and had program and professional expertise.  *See id.*  Accordingly, the ALJ

gave Dr. Inman-Dundon's opinion great weight.  *See id.*

The ALJ then addressed Plaintiff's allegations concerning her disability and symptoms

arising from a history of head injuries, fibromyalgia, sarcoidosis and mental health.  *See id.*

Plaintiff's alleged symptoms consisted of difficulty breathing from sarcoidosis, difficulty staying

focused, difficulty sitting for long periods, and trouble with crowds.  *See id.*  Upon review of

these allegations, the ALJ determined that Plaintiff's medically determinable impairments could

reasonably cause the alleged symptoms, but the medical evidence of record was "not entirely

consistent" with the intensity, persistence, and limiting effects of those symptoms that Plaintiff

was alleging.  *See id.*  The ALJ then clarified that this finding was based on Plaintiff's failure to

produce evidence that was sufficiently probative to substantiate her allegations, meaning that

"significant weight" could not be afforded to her complaints.  *See id.*  The ALJ further clarified

that she afforded Plaintiff's symptom testimony no weight for the following reasons:

> (1) Despite alleging respiratory issues, Plaintiff continued to
> smoke cigarettes for part of the period being reviewed and at some

appointments she specifically denied that she had any pulmonary symptoms.

(2) Plaintiff alleged that she suffered from fibromyalgia but failed to satisfy the requirements of SSR 12-2p.

(3) Although Plaintiff has spondyloarthropathy, her records show improvement after medication treatment.  Plaintiff also indicated in 2018 that she was less achy and more active.

(4) Records show that Plaintiff has clear speech, good memory and knowledge, a normal mood and affect, a well-kept appearance, good emotional control, and no issues with attention, concentration, or memory.

(5) During the relevant period, Plaintiff was given a urine drug screen and it came back positive for amphetamines.

(6) Plaintiff's treatment provider gave her a work physical in June 2017 and stated that she appeared healthy.

(7) Records describe Plaintiff as "quite active" and show that she is generally able to exercise daily.

(8) Plaintiff has reported her sarcoidosis as being stable for years and in sustained remission.

*See* AR at 107.

Next, the ALJ discussed the opinions of Jeanne Shapiro, Ph.D., Dorothy Leong, M.D., James Edinger, M.D., and Loretta Edinger, N.P.  *See id.*  Dr. Shapiro found that Plaintiff had mild-to-moderate limitations in her ability to relate to others and deal with stress and moderate limitations in her ability to maintain a routine and schedule.  *See id.*  According to the ALJ, this opinion was based on Dr. Shapiro examining Plaintiff and finding her to be depressed, sad, and experiencing impaired memory.  *See id.*  The ALJ only afforded Dr. Shapiro's opinion partial weight because Dr. Shapiro only examined Plaintiff once, Plaintiff regularly attended appointments, and the record lacked evidence of Plaintiff's inability to maintain a routine.  *See id.*  Similarly, the ALJ only afforded Dr. Leong's opinion partial weight.  *See id.*  Dr. Leong

opined that Plaintiff could only occasionally lift or carry fifty pounds, could only sit and walk for

two hours at a time and six hours total in a day, should limit her exposure to respiratory irritants,

and would not be interrupted at work by her impairment.  *See id.*  Although the ALJ noted that

Dr. Leong's opinion was supported by extensive evidence and consistent with the consultative

examiner's opinion, she only gave it partial weight because Dr. Leong did not examine Plaintiff,

and Plaintiff testified to frequent shortness of breath, which was a greater limitation than Dr.

Leong found.  *See id.*

Finally, the ALJ discussed the opinions of Dr. Edinger and N.P. Edinger, to which she

gave "very little weight."  The ALJ noted that both health care providers stated that Plaintiff was

unable to work without citing any supporting evidence.  *See id.*  Additionally, the ALJ noted that

these health care providers' opinions conflicted with other opinion evidence of record and

addressed an issue reserved for Defendant to decide.  *See id.*

Finally, the ALJ concluded that her RFC evaluation was supported by treatment notes,

clinical findings, and diagnostic test results in the record.  *See id.* at 108.

### 1.  *ALJ's finding regarding Plaintiff's subjective allegations*

#### a.  *Plaintiff's position*

Plaintiff contends that the ALJ improperly evaluated her subjective complaints about her

symptoms when the ALJ found that such complaints were "not entirely consistent with . . . the

record."  *See* Dkt. No. 8 at 22-25.  First, Plaintiff argues that the ALJ improperly relied on

Plaintiff's urine drug screen coming back positive for amphetamines to discredit her testimony

because she was "consistently prescribed amphetamines for her ADD or ADHD" and, therefore,

her positive drug test should not detract from her credibility.  *See id.* at 23.  Next, Plaintiff

contends that the ALJ "selectively cit[ed] to evidence allegedly inconsistent with Plaintiff's allegations" to reach a credibility finding adverse to her.  *See id.* at 23-24.  To support this contention, Plaintiff points to the fact that the ALJ noted a single treatment note indicating "improvement with medication" and "the ability to be more active," while the summation of her treatment showed that she was prescribed Sulfasalazine daily, still described her pain level as 5/10, and still experienced "generalized morning stiffness for a few minutes and back pain."  *See id.* at 23.  Additionally, Plaintiff maintains that the ALJ failed to discuss objective findings contained in the treatment notes of Dr. Khairallah and Arthritis Health Associates ("AHA"), which showed "positive FABER signs bilaterally; significantly limited anterior extension in the cervical spine; positive PCP squeeze on the right; tenderness . . . in multiple joints on range of motion; positive Patrick's maneuver; and positive sacroiliac (SI) joint tenderness, left greater than right."  *See id.* at 23-24.  According to Plaintiff, the ALJ's failure to discuss these findings casts doubt on whether the ALJ considered the entire record and renders the ALJ's analysis of her subjective complaints flawed.  *See id.* at 25.

### b.  *Defendant's position*

In response, Defendant reasons that the ALJ's assessment of Plaintiff's subjective complaints is "entitled to great deference," and Plaintiff failed to establish that the ALJ's assessment was "patently unreasonable," which she must do to succeed.  *See* Dkt. No. 9 at 14. Defendant asserts that the ALJ's finding that Plaintiff's subjective complaints were "not entirely consistent" with the evidence was substantially supported by, among other things, the medical opinions, normal physical and mental examination findings, and evidence of Plaintiff's improved functioning.  *See id.* at 14.  Furthermore, although Defendant concedes that Plaintiff is correct

that her positive urine drug test should not have undermined her credibility, he contends that the ALJ's reliance on the drug test to reject Plaintiff's subjective complaints was harmless error because "there is substantial other evidence supporting the ALJ's" assessment of those complaints. *See id.* (citing *Lilic v. Comm'r of Soc. Sec.*, No. 14-1420, 2016 WL 674876, at *12 (N.D.N.Y. Jan. 19, 2016); *Chambers v. Comm'r of Soc. Sec.*, No. 14-190, 2015 WL 6157434, at *9 (N.D.N.Y. Oct. 20, 2015) (finding that incorrectly evaluating one piece of evidence when making credibility determination was harmless error due to extensive support of ALJ's finding from other evidence)).

Next, Defendant argues that the ALJ did not "cherry pick" evidence, but rather she merely weighed the evidence. *See id.*  Specifically, Defendant maintains that the ALJ's reliance on the treatment note indicating that Plaintiff was more active and her pain had improved to support the credibility finding was "particularly telling" because it came after a note indicating that Plaintiff reported being "quite active" and exercising daily. *See id.* at 14-15.  According to Defendant, the ALJ's assessment of an "extremely limited RFC" is further proof that the ALJ did not ignore other evidence indicating that Plaintiff continued to experience symptoms. *See id.* at 15.  Further, Defendant claims that, to the extent the ALJ did not specifically discuss some of the "abnormal physical examination findings," it was not error because ALJs do not need to discuss every piece of evidence in the record, failure to mention an item does not mean that it was not considered, and the ALJ was also entitled to rely on the presence of "many normal physical examinations in the record." *See id.*  As a result, Defendant concludes that Plaintiff cannot show that the ALJ's findings regarding her subjective complaints were patently unreasonable. *See id.*

### c.   Analysis

"As a fact-finder, the ALJ has 'the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence.' . . . Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are 'patently unreasonable.'. . ."  *Pietrunti v. Dir., Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) (internal quotations omitted).  "In assessing the credibility of the subjective evidence of pain and disability provided by the plaintiff's testimony, the ALJ considers the objective medical evidence and a number of other factors."  *Osborne v. Astrue*, No. 6:07-CV-0314 (LEK), 2010 WL 2735712, *7 (N.D.N.Y. July 9, 2010) (citing SSR 96–7p).

These factors include the following:

> 1. The individual's daily activities;
>
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment the individual uses to relieve pain or other symptoms . . .; and
>
> (7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *8 (citing [SSR 96–7p]).

As an initial matter, Plaintiff is correct, as Defendant concedes, that the ALJ committed error by partially basing her credibility determination on the fact that Plaintiff's urine drug

screening came back positive for amphetamines, which she was prescribed for her ADD or ADHD.  Plaintiff's compliance with her prescribed course of drug treatment for ADD or ADHD should support her credibility, not detract from it.  *See* SSR 18-3p.  However, as the following analysis shows, the ALJ's error does not constitute the type of harmless error that requires reversal because the positive drug screening was merely one of several pieces of evidence on which the ALJ relied to reach her decision.  *See Lilic v. Comm'r of Soc. Sec.*, No. 6:14-CV-1420 (DNH/ATB), 2016 WL 674876, *12 (N.D.N.Y. Jan. 19, 2016) (finding that ALJ's improper reliance on one piece of evidence was harmless error where ALJ's credibility determination was supported by other substantial evidence); *Chambers v. Comm'r of Soc. Sec.*, No. 7:14-CV-190 (GTS), 2015 WL 6157434, *9 (N.D.N.Y. Oct. 20, 2015) (finding that ALJ's misreading of evidence was harmless error because the ALJ's credibility analysis was otherwise proper and supported by substantial evidence).

After considering the evidence, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record."  *See* AR at 106.  In reaching this finding, the ALJ explicitly noted Plaintiff's continued habit of smoking cigarettes, Plaintiff's ability to be more active, records describing Plaintiff as "quite active," and evidence showing that Plaintiff had the ability to exercise daily.  Thus, the ALJ took Plaintiff's daily activities into consideration.  Moreover, the ALJ considered Plaintiff's allegations of respiratory issues despite Plaintiff explicitly denying experiencing pulmonary symptoms at appointments and continuing to smoke; improvement of Plaintiff's spondyloarthropathy with medication; Plaintiff's decreased achiness; Plaintiff's allegations of

fibromyalgia despite her failure to satisfy SSR 12-2p; Plaintiff's normal mental, emotional, and cognitive functioning; Plaintiff's healthy appearance at the work physical her treatment provider performed; and the fact that Plaintiff's sarcoidosis had been stable and in remission for several years.  The ALJ also noted Plaintiff's alleged difficulty breathing from sarcoidosis, trouble staying focused, difficulty sitting for an extended period of time, and trouble with crowds.  Thus, the ALJ took into consideration Plaintiff's pain, symptoms, possible aggravating factors, effectiveness of treatment with medication on symptoms, and any other factors that might indicate functional limitations or restrictions for Plaintiff.

Moreover, the reasons that the ALJ provides for discrediting Plaintiff's subjective complaints make several references to objective medical records, which makes it clear that she considered objective medical evidence in addition to the relevant factors listed above.  *See id.* at 107 (stating that "records indicate improvement with medication," "records describe clear speech, good memory and a good fund of knowledge . . . ," and "there is evidence that the claimant is generally able to exercise on a daily basis").  The ALJ also based her determination on the opinions of Dr. Lorensen and Dr. Inman-Dundon, which she discussed immediately prior to explaining why she discredited Plaintiff's subjective disability and symptom complaints.  The ALJ explained the findings of both Dr. Lorensen and Dr. Inman-Dundon and specifically indicated medical consistencies between these opinions and the objective medical evidence in the record, citing specific portions of the medical records for support.  Therefore, it appears that the ALJ considered both objective medical evidence and many of the relevant factors listed above in determining Plaintiff's credibility.

Plaintiff argues that the ALJ noted her "improvement with medication" and "ability to be more active," but neglected to discuss other medical evidence showing greater physical

limitations, which raises doubts about whether the ALJ considered the entire record.  This

argument is unavailing.  As Defendant notes, the ALJ is not required to explicitly discuss every

piece of evidence in the record and the fact that she did not specifically cite certain pieces of

evidence does not establish that she failed to consider them.  *See Brault v. Soc. Sec. Admin.,*

*Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012).  Plaintiff cites several pieces of evidence in the

record that she alleges contradict the ALJ's credibility finding, *see* Dkt. No. 8 at 23-24 (citing AR

at 1319, 1321, 1328, 1337, 134), while Defendant cites several pieces of evidence in the record

to support the ALJ's credibility finding, *see* Dkt. No. 9 at 14-15 (citing AR at 895-96, 966, 980,

1140, 1146, 1172, 1227, 1247, 1251, 1255, 1319, 1326, 1359).  Upon reviewing the record with

particular attention to the evidence that both parties cite, it is clear that, although the Court or

another ALJ might have weighed the evidence differently or reached a different determination on

Plaintiff's credibility, there is substantial evidence in the record to support the ALJ's finding on

Plaintiff's credibility.  *See Clark v. Comm'r of Soc. Sec.*, No. 7:13-CV-256 (FJS), 2016 WL

1057047, *6 (N.D.N.Y. Mar. 14, 2016) (stating that, "to the extent that Plaintiff points to

evidence in the Administrative Record that reasonably might support a conclusion that [Plaintiff]

is disabled, 'whether there is substantial evidence supporting the appellant's view is not the

question' on appeal" (quotation omitted)); *see also Debra T. v. Comm'r of Soc. Sec.*, No. 8:16-

CV-0157 (TWD), 2019 WL 1208788, *9 (N.D.N.Y. Mar. 14, 2019) (stating that "[t]he Court

will not now reweigh evidence which was before the ALJ" (citations omitted)).  Contrary to

Plaintiff's contentions, the ALJ did not misread the evidence or selectively parse the record for

evidence to support her finding; rather, she carried out her duty to weigh the evidence of record

and resolve conflicts among evidence therein.  *See Michelle M. v. Comm'r of Soc. Sec.*, No. 3:18-

CV-1065 (TWD), 2020 WL 495170, *8 (N.D.N.Y. Jan 30, 2020) (collecting cases).  It is not for

the Court to reweigh that evidence based on Plaintiff's disagreement with the result.  *See id.*
(collecting cases).

Accordingly, the Court finds that the ALJ's credibility determination is not "patently
unreasonable."

### 2.  *ALJ's development of the record*

#### a.  *Plaintiff's position*

Plaintiff first argues that the ALJ committed error in reaching her RFC finding because
she failed to request medical opinions from several of Plaintiff's treating sources when there
were "gaps in the record" and instead relied upon "stale opinions" that were based upon either a
May 2016 examination or review of an incomplete record.  *See* Dkt. No. 8 at 13.  To this point,
Plaintiff claims that the fact that the ALJ requested a medical opinion from Dr. Leong, a non-
examining, medical expert without specialization in traumatic brain injuries, sarcoidosis, or
spondyloarthropathy, establishes that "the ALJ obviously found a gap in the record."  *See id.*

Next, Plaintiff argues that the record lacks any "function-by-function opinion" of her
mental or physical capabilities from any of her treating sources.  *See id.* at 14.  As such, Plaintiff
contends that the ALJ was required to recontact James Edinger, M.D., and Loretta Edinger, N.P.,
to provide more detailed opinions instead of rejecting their opinions, in which they found that
Plaintiff was unable to work, for lack of detail.  *See id.* at 14-15 (citing 20 C.F.R.
§ 404.1520b(2)(i); *Groff v. Comm'r of Soc. Sec.*, 2008 WL 4104689, at *11 (N.D.N.Y. Sept. 3,
2008); *Mecklenburg v. Astrue*, 2009 WL 4042939, at *6 (W.D.N.Y. Nov. 19, 2009)).  Plaintiff
further argues that the ALJ's duty to request opinions from Dr. Edinger and N.P. Edinger is
supported by the record, which shows that (1) she received ongoing treatment from them from

April 5, 2013, through October 19, 2018, and that (2) Dr. Edinger and N.P. Edinger were her only treating sources who had a continuous treatment relationship with her.  *See id.* at 15.

Plaintiff further contends that, instead of discounting her subjective symptom complaints based on a "lack of a treating physician or other source statement" to substantiate the complaints, the ALJ should have requested such substantiating evidence from Dr. Edinger and N.P. Edinger. *See id.* at 16.  Plaintiff maintains that, by failing to request such evidence, the ALJ relied on an incomplete record to reject her complaints.  *See id.*  To this point, Plaintiff claims that, although the ALJ obtained a "non-treating and non-examining medical expert's opinion regarding physical functioning," she only gave this opinion partial weight, which acted as a rejection of the opinion and created a gap in the record that the ALJ needed to fill.  *See id.* (citing *Harold W.J. v. Comm'r of Soc. Sec.*, 2019 WL 1410350, at \*9 (N.D.N.Y. Mar. 27, 2019)).

Plaintiff similarly argues that the ALJ relied on gaps in both mental health treatment notes and opinion evidence to reach her RFC finding.  *See id.* at 17.  Plaintiff claims that, despite her testimony and other available evidence showing that she received weekly mental health treatment at Syracuse Behavioral Health ("SBH"),[2] the record is devoid of all therapy notes from SBH and only contains her "initial and psychiatric evaluation."  *See id.*  Furthermore, Plaintiff states that the record shows she was receiving weekly counseling after being diagnosed with anxiety, ADHD, and PTSD on December 27, 2016, but the ALJ was not provided with records containing her therapist's treatment notes.  *See id.*  Plaintiff argues that, since the ALJ made note of these missing records during her first hearing and they were never provided, the ALJ committed error by failing to request the missing records on her own.  *See id.* (citing *Tammy H.*

---

[2] The Court notes that, although Plaintiff refers to her mental health facility as Strong Behavioral Health, the name of the facility is actually Syracuse Behavioral Health.

*v. Comm'r of Soc. Sec.*, 2019 WL 4142639, at *11 (N.D.N.Y. Aug. 30, 2019); *Morse v. Comm'r of Soc. Sec.*, 2014 4346456, at *11 (N.D.N.Y. Aug. 29, 2014)).  According to Plaintiff, this error was compounded by the ALJ's reliance on Dr. Inman-Dundon's opinion, which, as discussed below, Plaintiff contends was error in and of itself.  *See id.* at 18-19.  Finally, Plaintiff contends that the ALJ committed error because Dr. Shapiro completed an updated examination of her shortly after the ALJ rendered her decision that Plaintiff was not disabled and that, without considering this examination, the record was incomplete.  *See id.* at 20.

### b. *Defendant's position*

In response, Defendant claims that an ALJ is only required to request additional evidence where there are "obvious gaps" in the record, which there were not here.  *See* Dkt. No. 9 at 3.  To support this contention, Defendant claims that the physical aspects of the ALJ's RFC finding are supported by (1) Dr. Lorensen's opinion that Plaintiff had no physical limitations other than the need to avoid pulmonary irritants; (2) a combination of Dr. Leong's opinion that Plaintiff could do "a range of medium work on a regular and sustained basis" and Plaintiff's subjective complaints; (3) Plaintiff's continued smoking; (4) improvement of Plaintiff's spondyloarthropathy with treatment and Plaintiff's comments that she has been more active; and (5) Plaintiff's January 2017 "work physical" and repeated normal physical examination findings. *See id.* at 3-4.  Similarly, Defendant claims that the mental aspects of the ALJ's RFC finding are supported by Dr. T. Inman-Dundon's opinion that Plaintiff could do unskilled work; Dr. Shapiro's opinion, which was given partial weight; and Plaintiff's records showing positive mental health.  *See id.* at 4-5.

With regard to Plaintiff's assertions regarding the ALJ's need to develop the record, Defendant contends that the fact that the ALJ requested an opinion from Dr. Leong does not necessarily establish that there was a gap in the record and that, even if there was a gap in the record, Dr. Leong's "opinion effectively filled it." *See id.* at 5.  Moreover, Defendant argues that the ALJ's decision to give Dr. Leong's opinion only partial weight does not render the record incomplete; rather, it shows that the ALJ was weighing the evidence of record and, in doing so, Plaintiff's subjective complaint testimony was partially credited, leading to a more limited RFC finding.  *See id.* at 5-6 (citing *Nesevitch v. Colvin*, No. 15-935, 2016 WL 5717270, at *16 (N.D.N.Y. Sept. 30, 2016) (finding ALJ committed harmless error where the RFC was more limited than an opinion it relies on)).

Defendant also asserts that the ALJ requested and received all available mental health records from SBH; and, thus, no records are missing.  *See id.* at 6.  According to Defendant, records of the weekly therapy sessions Plaintiff attended are not in the administrative record because SBH did not maintain them, meaning there were no records left for the ALJ to request. *See id.*  Defendant further contends that Plaintiff's argument that the ALJ should have requested records from SBH should fail because Plaintiff has neither provided additional SBH records nor indicated how the allegedly missing records would alter the ALJ's decision.  *See id.* (citing *Reices-Colon v. Astrue*, 523 F. App'x 796, 799 (2d Cir. 2013) (summary order)).

Finally, Defendant contends that the ALJ was not required to request any medical opinions from Plaintiff's treating sources because there was no obvious gaps in the record the ALJ needed to fill.  *See id.* at 7.  Furthermore, Defendant asserts that the ALJ does not have a legal obligation to recontact Plaintiff's treating sources "because they provided conclusory opinions on an issue reserved to the Commissioner."  *See id.* (citing *Benjalee W. v. Saul*, No. 18-

1261, 2020 WL 1029023, at *5 (N.D.N.Y. Mar. 3, 2020)).  Accordingly, Defendant concludes

both that the ALJ's non-disability finding was supported by the record and that Plaintiff failed to

establish that the ALJ needed to request additional evidence to develop the record.  *See id.* at 8.

### c.   *Analysis*

It is firmly established in the Second Circuit that, based on the non-adversarial nature of

social security proceedings, the Commissioner has an affirmative duty to develop the

administrative record.  *See Hernandez v. Comm'r of Soc. Sec.*, No. 1:13-cv-959 (GLS/ESH),

2015 WL 275819, *2 (N.D.N.Y. Jan. 22, 2015) (quoting *Felder v. Astrue*, No. 10-CV-5747,

2012 WL 3993594, at *11 (E.D.N.Y Sept. 11, 2012) (quoting *Garcia v. Apfel*, No. 98 CIV. 1370,

1999 WL 1059968, at *5 (S.D.N.Y. Nov. 19, 1999))) (other citation omitted).  This duty

"includes obtaining the treating physicians' assessments of plaintiff's functional capacity."

*Clobridge v. Astrue*, No. 5:07-CV-00691 (NAM), 2010 WL 3909500, *7 (N.D.N.Y. Sept. 30,

2010) (citing 20 C.F.R. § 404.1512(e); *Hardhardt v. Astrue*, 2008 WL 2244995, at *9 (E.D.N.Y.

May 29, 2008)).  However, the ALJ is not required to further develop the record where all

evidence of record is consistent and sufficient such that the ALJ can make her determination

without additional evidence.  *See Hernandez*, 2015 WL 275819, at *2 (citing 20 C.F.R.

§ 404.1520b(a)); *see also Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017)

(summary order) (stating that, where "'the record contains sufficient evidence from which an

ALJ can assess the [claimant's] residual functional capacity,' *Tankisi v. Comm'r of Soc. Sec.*, 521

Fed. Appx. 29, 34 (2d Cir. 2013) (summary order), a medical source statement or formal medical

opinion is not necessarily required")) (other citation omitted).  Nor is the ALJ required to further

develop the record where it does not contain any "obvious gaps."  *See Hernandez*, 2015 WL

275819, at *2 (citing *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999)).

- 20 -

Plaintiff's contention that there was a gap in the record that the ALJ "obviously found" is unpersuasive.  Plaintiff has not cited any legal authority indicating that the Court should find an obvious gap in the record merely because the ALJ requested an opinion from consulting medical expert Dr. Leong.  An ALJ is entitled to rely on consultative opinions, and such opinions may even constitute substantial evidence where the record supports them.  *See Washburn v. Colvin*, No. 5:15-cv-0955 (LEK), 2016 WL 3659912, *14 (N.D.N.Y. June 30, 2016) (citation omitted); *Younes v. Colvin*, No. 1:14-CV-170 (DNH/ESH), 2015 WL 1524417, *5 (N.D.N.Y. Apr. 2, 2015) (citation omitted).  Therefore, it would be illogical to presume that an ALJ's request for a consultative opinion on its own shows that a gap in the record exists.  Moreover, as Defendant argues, even if the ALJ's request for an opinion from Dr. Leong did show that a gap existed, that gap would logically have been filled when the ALJ requested and obtained Dr. Leong's opinion. Finally, the mere fact that opinions on which the ALJ relied were based on examinations rendered several years prior to the ALJ's decision does not necessarily render those opinions stale, especially where, as here, Plaintiff has not pointed to evidence indicating that her condition has significantly worsened since those examinations.  *See Maxwell H. v. Comm'r of Soc. Sec.*, No. 1:19-CV-0148 (LEK/CFH), 2020 WL 1187610, *5 (N.D.N.Y. Mar. 12, 2020) (citations omitted).

Moreover, the fact that the record does not contain any "function-by-function opinions" from any of Plaintiff's treating sources addressing her mental or physical abilities does not create a gap in the record or render the record incomplete.  As stated above, so long as the record has no obvious gaps and contains sufficient evidence for the ALJ to render an RFC finding, she has no duty to recontact treating sources for statements or opinions.  *See Monroe*, 676 F. App'x at 8. Here, the record contains a consultative opinion from Dr. Lorensen, which was based on an

examination of Plaintiff and to which the ALJ gave "great weight"; a consultative opinion from Dr. Inman-Dundon regarding Plaintiff's psychological state, which was not based on an examination, but was based on a review of the record, and, to which the ALJ gave "great weight"; Plaintiff's disability reports, function report, work history report, and hearing testimony; Plaintiff's medical records and progress reports from various healthcare providers, including Dr. Edinger and N.P. Edinger, dated as early as September 2012 through July 2018; hearing testimony from a vocational expert; a consultative opinion from Dr. Shapiro, which was based on an examination of Plaintiff and to which the ALJ gave partial "weight"; and a consultative opinion from Dr. Leong, which was not based on an examination but relied on extensive evidence of record, and, to which the ALJ gave "partial weight." *See generally* AR.  Moreover, in response to the ALJ's interrogatory request, Dr. Leong indicated that there was sufficient objective medical and other evidence to form an opinion on the nature and severity of Plaintiff's impairments and cited the specific medical evidence on which she relied to formulate her opinions.  *See id.* at 1213, 1216, 1222-23.

Generally, this evidence indicates that most of Plaintiff's conditions are either improving or under control and that most test and examination findings are normal.  Therefore, it appears that the record has no obvious gaps and contains consistent and sufficient evidence to support the ALJ's RFC finding without her having to recontact Plaintiff's treating physicians.  *See Breinin v. Colvin*, No. 5:14-CV-011666 (LEK/TWD), 2015 WL 7749318, *10 (N.D.N.Y. Oct. 15, 2015) (finding that the ALJ had no duty to recontact the plaintiff's treating physician where the record contained sufficient evidence, which included "[p]laintiff's statements, diagnostic test results, and medical findings to support the ALJ's" RFC finding); *Amanda L. C. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0817 (GTS), 2020 WL 4783169, *5 (N.D.N.Y. Aug. 18, 2020) ("declin[ing] to find that

there was any gap in the record that required the ALJ to obtain an opinion from a treating physician in order to make a valid decision regarding [the p]laintiff's disability status" "given the significant amount of medical records obtained and the presence of (and the ALJ's reliance on) other medical opinions" (citation omitted)).

Plaintiff's similar argument that the ALJ should have requested that Dr. Edinger and N.P. Edinger provide her with evidence to substantiate Plaintiff's subjective symptom complaints fails for the same reasons.  As explained above, the record was not incomplete; and, thus, the ALJ was not required to further develop the record by recontacting Plaintiff's treating physicians.  *See Monroe*, 676 F. App'x at 8; *Amanda L. C.*, 2020 WL 4783169, at *5.  This is not changed by the fact that the ALJ only afforded partial weight to Dr. Leong's consultative opinion because, contrary to Plaintiff's assertion, affording partial weight to an opinion is not the same as outright rejecting or disregarding it.  *See DePriest v. Comm'r of Soc. Sec.*, 448 F. Supp. 3d 279, 287 (W.D.N.Y. 2020) (citing *Beckles v. Comm'r of Soc. Sec.*, No. 18-CV-321P, 2019 WL 4140936, at *4 (W.D.N.Y. Aug. 30, 2019) (finding that an ALJ did not "reject" a medical opinion where she afforded it partial weight)).  Moreover, as Defendant points out, the ALJ only gave Dr. Leong's opinion partial weight because she partially credited Plaintiff's subjective complaints, which resulted in a more limited RFC finding than Dr. Leong's opinion.  This is a result of the ALJ weighing the evidence in accordance with her duty, not an incomplete record.  *Michelle M.*, 2020 WL 495170, at *8 (stating that "it was within the ALJ's purview to weigh the evidence of record, resolve any inconsistencies therein, and make a determination consistent with the evidence as a whole" (citations omitted)).  Therefore, even if the ALJ did commit error, which the Court finds she did not, it was harmless since the ALJ's RFC finding was more favorable to Plaintiff than Dr. Leong's opinion.  *See Nesevitch v. Colvin*, No. 3:15-CV-935, 2016 WL

5717270, *16 (N.D.N.Y. Sept. 30, 2016) (finding that any error the ALJ committed by relying on physician's opinion was harmless because the ALJ assessed a more restricted RFC than the opinion proposed); *Shorter v. Comm'r of Soc. Sec.*, No. 5:12-CV-1502 (NAM/ATB), 2014 WL 1280459, *10 (N.D.N.Y. Mar. 27, 2014) (finding that "[i]n light of the other substantial evidence in the record supporting the ALJ's RFC determination and the fact that the RFC determination is actually more restrictive than [the state agency consultant's] assessment, any error in considering this report was harmless" (citing *Zabala v. Astrue*, 595 F.3d 402, 409-10 (2d Cir. 2010) (finding that remand is unnecessary, notwithstanding a legal error, where the application of correct legal pricniples [sic] to the record could lead only to the same conclusion))).

Finally, Plaintiff's argument that the ALJ relied on gaps in both the mental health treatment notes and opinion evidence regarding Plaintiff's mental health to reach the RFC finding is similarly unavailing. Specifically, Plaintiff contends that therapy notes and records from SBH are missing; however, the ALJ requested all records from SBH twice and received such records both times. *See* AR at 945-55; 1369-1408. These records cover Plaintiff's treatment at SBH from December 2016 through June 2018. Therefore, it appears that all records from SBH are in the administrative record, and the ALJ fulfilled her duty to develop the record by requesting and obtaining records from SBH twice. Moreover, Plaintiff has neither identified the specific SBH records that are allegedly missing nor indicated how the allegedly missing records would have changed the ALJ's RFC finding. Therefore, the Court rejects Plaintiff's argument that the ALJ relied on a gap in the record and failed to develop the record. *See Reices-Colon v. Astrue*, 523 F. App'x 796, 799 (2d Cir. 2013) (summary order) (rejecting plaintiff's argument that the ALJ should have requested additional records to develop the administrative record where she failed to identify specific records that were missing or explain how the allegedly missing records would

affect the ALJ's decision); *Heather C. v. Berryhill*, No. 5:17-cv-0962, 2019 WL 1432593, *3 (N.D.N.Y. Mar. 29, 2019) (citation omitted) (same).

Accordingly, the Court finds that the ALJ fulfilled her duty to develop the record and that the record contained sufficient and substantial evidence to support the ALJ's RFC finding.

### 3. *ALJ's evaluation of opinion evidence*

#### a. *Plaintiff's position*

Plaintiff argues that the ALJ's RFC finding was not supported by substantial evidence because it relied on the opinions of Dr. Lorensen and Dr. Inman-Dundon despite the insufficiency of those opinions. *See* Dkt. No. 8 at 20. Plaintiff also takes issue with the ALJ's treatment of Dr. Shapiro's opinion and Dr. Leong's opinion. *See id.* at 19-22.

Specifically, Plaintiff argues that Dr. Lorensen's opinion that she had no physical limitations other than the need to avoid respiratory irritants fails even remotely to address her functional abilities. *See id.* Plaintiff states that it is thus unclear how Dr. Lorensen's opinion supports the ALJ's determinations as to her ability to perform sedentary work and specifically her "postural and manipulative abilities and position changes." *See id.* Plaintiff further argues that Dr. Lorensen's opinion only discussed environmental limitations, and the ALJ failed to explain how this opinion permits her RFC finding that Plaintiff can perform sedentary work. *See id.* at 21. As a result, Plaintiff contends that Dr. Lorensen's report cannot be considered substantial evidence supporting the "very specific abilities and limitations" the ALJ found. *See id.* at 20-21.

In addition, Plaintiff claims that the ALJ's reliance on Dr. Inman-Dundon's opinion was error because Dr. Inman-Dundon did not review most of the record on May 24, 2016, formulated

her opinion without the missing therapy notes, and was a non-examining source.  *See id.* at 18.

Plaintiff also contends that Dr. Inman-Dundon's opinion was insufficient because it cited

consultative examiner Dr. Shapiro's findings, yet the ALJ discredited Dr. Shapiro's opinion.  *See*

*id.* at 18-19 (quoting *Lohmann v. Colvin*, No. 12-CV-964S, 2014 WL 1686822, at *3 (W.D.N.Y.

Apr. 29, 2014) (holding that the ALJ's finding was not supported by substantial evidence where

ALJ gave great weight to a state agency consultant's opinion that almost exclusively relied on

another opinion that the ALJ rejected).

       Similarly, Plaintiff maintains that the ALJ's "rejection" of Dr. Shapiro's opinion was error

because she partially based her rejection on the fact that Dr. Shapiro only examined Plaintiff

once, but afforded "great weight" to consultative internal medicine examiner Dr. Lorensen's

opinion based on his "opportunity to examine" Plaintiff and his "professional expertise."  *See id.*

at 19.  Plaintiff asserts that this is akin to the ALJ applying a double standard and cherry-picking

evidence to support her finding that Plaintiff is not disabled.  *See id.*  Additionally, Plaintiff

argues that it was improper for the ALJ to reject Dr. Shapiro's opinion based on her regular

attendance at medical appointments and a lack of evidence showing she could not maintain a

routine because frequently attending treatment does not show that she can maintain a full-time

job.  *See id.* at 19-20 (citing *Fountaine v. Comm'r of Soc. Sec.*, No. 18-CV-6033-JWF, 2019 WL

1428522, at *4 (W.D.N.Y. Mar. 29, 2019)).  Finally, Plaintiff contends that the ALJ committed

error because Dr. Shapiro completed an updated examination of her shortly after the ALJ

rendered her decision that she was not disabled and that, without consideration of this

examination, the record was incomplete.  *See id.* at 20.  Accordingly, Plaintiff asserts that the

ALJ erred by rejecting Dr. Shapiro's opinion and relying on Dr. Inman-Dundon's opinion.  *See*

*id.*

Plaintiff also contests the ALJ's reliance on Dr. Leong's opinion in making her RFC determination.  *See id.* at 21.  Plaintiff argues that the ALJ committed error by affording Dr. Leong's opinion partial weight and finding it "generally consistent" with Dr. Lorensen's opinion because Dr. Leong (1) was not a specialist, (2) did not examine Plaintiff, (3) did not review all evidence of record, including treatment notes regarding her spondyloarthropathy, (4) did not discuss treatment notes created after December 8, 2017, (5) did not identify her medically determinable impairments, and (6) did not identify any spondyloarthropathy diagnosis or treatment.  *See id.*  The ALJ only gave Dr. Leong's opinion partial weight based on Plaintiff testifying to greater breathing limitations than Dr. Leong opined; and, thus, Plaintiff contends that the ALJ committed error by failing to elaborate on those greater limitations when reaching her RFC finding.  *See id.* at 21-22.  According to Plaintiff, the ALJ should have specifically "discussed the treatment notes and tied findings to the specific abilities within the RFC finding," and that, by failing to do so, the RFC finding was both unsupported by substantial evidence and inconsistent with appropriate legal standards.  *See id.* at 22.

### b.  *Defendant's position*

As to Dr. Lorensen's opinion that Plaintiff has no physical limitations other than the need to avoid respiratory irritants, Defendant argues that Plaintiff's only protest is that the ALJ found a greater RFC limitation than Dr. Lorensen found, which is favorable to her.  *See* Dkt. No. 9 at 12. As such, Defendant asserts that the Court should not remand the case, especially since Plaintiff has not provided any evidence showing that her actual RFC is more limited than the ALJ's finding.  *See id.* (citing *Nesevitch*, 2016 WL 5717270, at *16; *House v. Comm'r of Soc. Sec.*, No. 15-1064, 2016 WL 4275732, at *10 (N.D.N.Y. Aug. 12, 2016) (stating "[i]t is the burden of the

claimant [ ] to establish the facts necessary to include limitations within an RFC")).  Moreover, Defendant argues that, contrary to Plaintiff's contention, Dr. Lorensen did assess her physical abilities because Dr. Lorensen's opinion explicitly states that Plaintiff had "no gross physical limitations."  *See id.*  Therefore, according to Defendant, the ALJ was permitted to rely on Dr. Lorensen's opinion despite reaching an RFC finding that was more limited.  *See id.*

In addressing the ALJ's reliance on Dr. Inman-Dundon's opinion, Defendant first argues that there are no SBH mental health records missing.  *See id.* at 8.  Nonetheless, Defendant contends that there is no such "unqualified rule" requiring an ALJ to discredit a medical opinion simply because new medical evidence supersedes that opinion.  *See id.* (citing *Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016) (summary order)).  Defendant also contends that it is Plaintiff's burden to show her condition has worsened, which she has failed to show after May 24, 2016, as the record shows Plaintiff was experiencing normal mental functioning since that date.  *See id.* at 8-9.

Moreover, Defendant argues that Plaintiff's reliance on *Lohmann v. Colvin*, 2014 WL 1686822, to argue that Dr. Inman-Dundon's opinion is misplaced because *Lohmann* is unlike Plaintiff's case.  *See id.* at 9.  Defendant distinguishes *Lohmann* on the ground that the state agency doctor's opinion in that case almost exclusively relied on the opinion that the ALJ rejected, whereas here, Dr. Inman-Dundon relied on Plaintiff's "medical records and daily activities" in addition to Dr. Shapiro's opinion.  *See id.*  Moreover, Defendant argues that, unlike *Lohmann*, where the ALJ found the consultative examiner's opinion insufficient, the ALJ here gave Dr. Shapiro's opinion partial weight and many of Dr. Shapiro's findings support both Dr. Inman-Dundon's opinion and the ALJ's decision.  *See id.*

Furthermore, Defendant asserts that Dr. Shapiro's opinion that Plaintiff's ability to "attend to a routine and maintain a schedule" was moderately limited "does not establish a specific RFC finding," which means that the opinion and the ALJ's RFC finding are not necessarily inconsistent.  *See id.* at 10.  However, Defendant further asserts that "in any case' it was proper for the ALJ to discount that portion of Dr. Shapiro's opinion.  *See id.*  According to Defendant, Plaintiff's argument that the ALJ applied a double standard to Dr. Shapiro's and Dr. Lorensen's opinions fails because the fact that a doctor only examined a claimant once "can cut both ways" in that a one-time examiner's opinion will be favored relative to a non-examining doctor's opinion, but a one-time examiner's opinion will be disfavored relative to a treating doctor's opinion.  *See id.* (citing 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2)).  Furthermore, Defendant states that the ALJ's rejection of Dr. Shapiro's opinion was proper because the ALJ noted that the opinion on Plaintiff's ability to maintain a routine was unsupported and inconsistent with evidence of record.  *See id.* at 11 (citing *Kim S. v. Comm'r of Soc. Sec.*, No. 17-926, 218 WL 5792759, at *6 (N.D.N.Y. Nov. 5, 218)).  In contrast, Defendant points out that the ALJ found Dr. Lorensen's opinion to be consistent with other evidence of record.  *See id.*

Finally, Defendant relies on a recent case from this district, *Della M. v. Comm'r of Soc. Sec.*, No 18-1281, 2020 WL 1030645, *6 (N.D.N.Y. Mar. 3, 2020), for the proposition that it was proper for the ALJ to discount Dr. Shapiro's opinion on the basis that Plaintiff regularly attended medical appointments.  *See id.*  Defendant further contends that, even if it was an improper factor to consider, the ALJ did not err because she also discounted Dr. Shapiro's opinion due to a lack of evidence that Plaintiff was unable to maintain a routine, which is a sufficient reason on its own.  *See id.* at 11 (citing *Kim S.*, 2018 WL 5792759, at *6 (stating that lack of evidentiary support may be good reason to reject even a treating physician's opinion)).

With regard to Dr. Leong's opinion, Defendant argues that there is no legal authority that prohibits an ALJ from relying on a non-specialist physician's opinion. *See id.* at 13. Additionally, Defendant asserts that, rather than point to evidence submitted after Dr. Leong provided her opinion, Plaintiff was required to demonstrate that such evidence showed her impairments have worsened, which she has failed to do. *See id.* Finally, Defendant contends that the ALJ did not need to state more specifically why she found an RFC that was more limited than Dr. Leong found because the ALJ's RFC finding was supported by substantial evidence, which included Dr. Leong's opinion. *See id.* Moreover, Defendant states that Plaintiff bears the burden here and has failed to point to anything showing that she is more limited than the RFC indicates. *See id.*

### c.   *Analysis*

Typically, an ALJ should afford a treating physician's opinion controlling weight where it is supported by substantial evidence in the record. *See Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) (citation omitted). However, where there are no treating source opinions of record, the treating physician rule logically does not apply. In the absence of a treating source opinion in the record, it is within the ALJ's purview to obtain and rely on consultative opinions. *See* 20 C.F.R. §§ 404.1519, 404.1527(a)(2); *Annabi v. Berryhill*, No. 16-CV-9057 (BCM), 2018 WL 1609271, *17 (S.D.N.Y. Mar. 30, 2018) (stating that, "[i]f no treating opinion is available, the ALJ has the discretion to 'obtain a consultative examination "on an individual case basis"'" (quoting *Hooper*, 199 F. Supp. 3d at 815-16 (quoting 20 C.F.R. § 404.1519))).

When relying on consultative opinions to formulate a claimant's RFC, it is the ALJ's duty to weigh the opinion evidence, provide reasons for the weight afforded, and review the whole

record.  *See Tyler M. v. Saul*, No. 3:19-CV-426 (CFH), 2020 WL 5258344, *9 (N.D.N.Y. Sept.

3, 2020) (stating that, "[a]lthough an ALJ will consider medical opinions regarding a plaintiff's

functioning, ultimately the ALJ is tasked with reaching an RFC based on the record as a whole"

(citation omitted)); *Christina M.F. v. Berryhill*, No. 5:17-CV-0840 (GTS), 2019 WL 147463, *7

(N.D.N.Y. Jan. 9, 2019) (stating that "the ALJ did precisely what she was expected to do:

consider all of the opinion evidence and balance the differing opined limitations in light of the

evidence as a whole when formulating the RFC").  When determining what weight to give the

opinions of non-treating sources, the Social Security regulations require the ALJ to consider

several factors, including "'(1) the frequency, length, nature, and extent of treatment; (2) the

amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the

remaining medical evidence; and (4) whether the physician is a specialist.'"  *Delossantos v.

Comm'r of Soc. Sec.*, No. 7:16-CV-0713, 2017 WL 4011265, *6 (N.D.N.Y. Sept. 11, 2017)

(quoting *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013))).

However, the ALJ is not required to explicitly recite each of these factors so long as her

"reasoning and adherence to the Regulations is clear."  *See id.* (quotation omitted).

  As an initial matter, it should be noted that the ALJ stated in her RFC finding that she

gave "very little weight" to the opinions of Dr. Edinger and N.P. Edinger; however, the

"opinions" the ALJ cites are merely medical records that summarize Plaintiff's appointments and

medical history, describe Plaintiff's symptoms and treatments, and state in a conclusory fashion

that Plaintiff is unable to work.  Thus, the opinions of Dr. Edinger and N.P. Edinger are not

medical opinions to which the treating physician rule applies,[3] and there are no treating source

---

[3] *See Clobridge v. Astrue*, No. 5:07-CV-00691 (NAM), 2010 WL 3909500, *7 (N.D.N.Y. Sept.
30, 2010) (stating that "[a] treating physician's belief that a plaintiff is 'totally disabled' is
irrelevant since that determination is reserved for the Commissioner" (citing *Taylor v. Barnhart*,

opinions in the record.  Furthermore, the parties do not dispute the ALJ's application of the above-described factors for weighing opinion evidence; and, upon review of the ALJ's reasons for assigning the opinions the weight that she did, there is no reason to find that she did not adhere in substance to such factors.

### (i)   Dr. Lorensen's opinion

Plaintiff's argument that Dr. Lorensen's opinion only addressed her environmental limitations and failed to address any of her functional abilities, thus rendering it unclear how the opinion supports the ALJ's RFC finding, is incorrect.  In Dr. Lorensen's consultative examination report, the doctor stated that upon examination Plaintiff had normal gait, could walk on her heels and toes without difficulty, could fully squat, had a normal stance, did not use an assistive device, did not need help changing or getting on and off of the examination table for her examination, could rise from her chair without difficulty, had no sensory deficits, had normal musculoskeletal functioning, no muscle atrophy in her extremities, and full strength in her upper and lower extremities.  *See* AR at 895-96.  As such, Dr. Lorensen found that Plaintiff had "no gross physical limitations."  *See id.* at 897.  The ALJ reiterated many of these findings when she explained that she gave Dr. Lorensen's opinion great weight in part because of its consistency

---

83 F. App'x 347, 349 (2d Cir. 2003); *Gladden v. Comm'r of Soc. Sec.*, 337 F. App'x 136, 138 (2d Cir. 2009)); *Bailey v. Berryhill*, No. 15 CV 9287-LTS-RLE, 2017 WL 1102671, *2 (S.D.N.Y. Mar. 24, 2017) (finding that records from physicians did "not contain medical opinions for which the ALJ was required to assign specific weight" where the records merely documented plaintiff's medical history, described exam and test results, described treatment plans, and reflected plaintiff's self-reported symptoms); *McNaughton v. Comm'r of Soc. Sec.*, No. 18-CV-1004L, 2020 WL 210080, *7 (W.D.N.Y. Jan. 14, 2020) (finding that a physician's records "are more accurately described as treatment notes than medical opinions" where they consisted of appointment summaries, past medical history, symptom and medication overviews, and descriptions of physical examination findings and treatment plans).

with Plaintiff's medical records.  *See id.* at 106.  Thus, contrary to Plaintiff's argument, Dr.
Lorensen's opinion clearly addressed more than just environmental limitations.

Moreover, given the fact that Dr. Lorensen's opinion stated that Plaintiff had "no gross
physical limitations," the ALJ's RFC assessment finding that Plaintiff could only perform
sedentary work with some postural, manipulative, and positional limitations (*e.g.*, she "should
not balance, kneel, crouch, crawl, or climb ladders/ropes/scaffolds"; she "should have the
opportunity to change positions every thirty minutes," *see id.* at 105) indicates a more restricted
physical finding than Dr. Lorensen's report and opinion would warrant.  Therefore, at best, even
if the ALJ committed error here, which the Court finds she did not, it is harmless since she
assessed an RFC that is more favorable to Plaintiff than Dr. Lorensen's opinion, *see Nesevitch*,
2016 WL 5717270, at *16; *Shorter v. Comm'r of Soc. Sec.*, No. 5:12-CV-1502 (NAM/ATB),
2014 WL 1280459, *10 (N.D.N.Y. Mar. 27, 2014) (citing *Zabala v. Astrue*, 595 F.3d 402, 409-
10 (2d Cir. 2010) (finding that remand is unnecessary, notwithstanding a legal error, where the
application of correct legal principles to the record could lead only to the same conclusion)); and
Plaintiff has failed to cite other substantial evidence illustrating that her RFC is more limited
than the ALJ found, *see House v. Comm'r of Soc. Sec.*, No. 7:15-CV-1064 (LEK), 2016 WL
4275732, *10 (N.D.N.Y. Aug. 12, 2016) (stating that "[i]t is the burden of the claimant . . . to
establish the facts necessary to include limitations within an RFC" and finding that "[t]he ALJ
was not obligated to prove a lack of limitations" (citations omitted)).

Finally, to the extent that Plaintiff argues that the ALJ's reliance on Dr. Lorensen's
opinion to assess the RFC is error because the RFC does not perfectly match the limitations
found in Dr. Lorensen's opinion, that argument also fails because an ALJ's RFC finding does not
need to match one single medical opinion perfectly, but rather it must be supported by the record

as a whole.  *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) (stating

that, "[a]lthough the ALJ's conclusion may not perfectly correspond with any of the opinions of

medical sources cited in his decision, he was entitled to weigh all of the evidence available to

make an RFC finding that was consistent with the record as a whole"); *Samantha S. v. Comm'r of

Soc. Sec.*, 385 F. Supp. 3d 174, 184 (N.D.N.Y. 2019) (noting that "as this court and others have

repeatedly stated 'there is no requirement that the ALJ pick one RFC and use that particular

evaluation in its entirety'" (quoting *Kikta v. Comm'r of Soc. Sec.*, 2016 WL 825259, at \*9

(N.D.N.Y. Feb. 9, 2016) (Report & Recommendation) (Baxter, M.J.), *adopted by*  2016 WL

865301 (N.D.N.Y. Mar. 2, 2016))); *Cheri Lee H. v. Comm'r of Soc. Sec.*, No. 5:19-CV-10, 2020

WL 109007, \*11 (N.D.N.Y. Jan. 9, 2020) (finding no reversible error where the record

demonstrated that "the ALJ resolved genuine conflicts in the record by weighing [a physician's]

findings of limitation against other less[] restrictive findings present in the record").

     Accordingly, the Court finds that the ALJ did not commit reversible error by affording

Dr. Lorensen's opinion "great weight" and partially relying on it to make her RFC determination.

#### (ii)    <u>Dr. Inman-Dundon's opinion</u>

     Plaintiff's argument that Dr. Inman-Dundon's opinion is not supported by substantial

evidence because it was partially based on a review of the record even though Plaintiff's SBH

treatment records were not part of the record at the time the opinion was rendered is unavailing.

Plaintiff is correct that records of her treatment at SBH were not yet part of the record at the time

Dr. Inman-Dundon's rendered her opinion on May 24, 2016.  *See* AR at 528, 541, 955 1408.

However, the mere fact that additional medical records were added to the administrative record

after Dr. Inman-Dundon rendered her opinion does not necessarily make that opinion stale or

unreliable.  *See Vicky K. v. Saul*, No. 6:19-CV-519 (MAD), 2020 WL 1975129, *4 (N.D.N.Y.
Apr. 24, 2020) (summary order) (stating that "the ALJ's reliance upon [a non-examining
consultative physician's] opinion was not improper simply because other treatment notes became
available since those notes did not materially alter the evidence reviewed by [the physician]"
(citing *Camille v. Colvin*, 652 Fed. Appx 25, 28 n.4 (2d Cir. 2016))); *Liberatore v. Colvin*, No.
5:15-CV-1483 (GTS), 2016 WL 7053443, *7 (N.D.N.Y. Dec. 5, 2016) (stating that "timeliness
of evidence is merely 'a factor that courts have cited in finding a lack of substantial evidence in
the *record*,' and does not necessarily compel rejection of a particular piece of evidence or the
ALJ's finding relying thereon" (quoting *Abar v. Colvin*, 15-CV-0095, 2016 WL 1298135, at *6
(N.D.N.Y. Mar. 31, 2016) (Suddaby, C.J.) (citations omitted))).

Additionally, Plaintiff has not established that any of the subsequent SBH records show
that her condition or symptoms have deteriorated or cited to any specific portion of the SBH
records to show how Dr. Inman-Dundon's opinion might have changed had they been
considered.  Similarly, Plaintiff's additional argument that Dr. Inman-Dundon did not review "the
majority of the record" is also unpersuasive as it is conclusory and does not point to any specific
portion of the administrative record that Dr. Inman-Dundon failed to consider other than the
SBH records in general, which account for just 44 pages of the 1408-page administrative record.
*See* AR at 946-53, 1369-1404.  Therefore, the Court rejects these arguments.  *See Vicky K.*, 2020
WL 1975129, at *4 (finding that the ALJ properly gave the non-examining consultative doctor's
opinion "great weight" even though the physician did not review records that became available
after the opinion was rendered because plaintiff failed to suggest, and the record did not indicate,
that her symptoms worsened after the opinion was rendered (citing *Camille v. Colvin*, 652 Fed.
Appx. 25, 28 n.4 (2d Cir. 2016))); *Liberatore*, 2016 WL 7053443, at *6 (rejecting plaintiff's

argument that the ALJ improperly gave a non-examining physician's opinion great weight because the physician did not review "the bulk of the evidence" where plaintiff's argument was conclusory and failed to specify any particular unreviewed record that would alter the physician's opinion).

Furthermore, Plaintiff appears to argue that it was improper for the ALJ to give Dr. Inman-Dundon's opinion great weight because she was a non-examining consultative physician, which the regulations caution against relying on. However, it is well established that the ALJ "is entitled to rely on the opinions of both examining and non-examining State agency medical consultants," *Liberatore*, 2016 WL 7053443, at *7 (citations omitted), and that such opinions "'may constitute substantial evidence if they are consistent with the record as a whole,'" *Little v. Colvin*, No. 5:14-cv-63 (MAD), 2015 WL 1399586, *9 (N.D.N.Y. Mar. 26, 2015) (quotation omitted). Thus, to the extent Plaintiff makes this argument, the Court rejects it because the mere fact that Dr. Inman-Dundon was a non-examining consultative physician does not render the ALJ's reliance on her opinion improper.

Finally, the Court rejects Plaintiff's argument that the ALJ improperly assigned Dr. Inman-Dundon's opinion great weight because the opinion cited Dr. Shapiro's findings, yet the ALJ "did not credit" Dr. Shapiro's opinion. Plaintiff cites *Lohmann* to support this argument, but that case is distinguishable from the current case. In *Lohmann*, the ALJ gave "great weight" to the opinion of a non-examining state agency psychological consultant, which relied "almost exclusively on" the opinion of a consultative examiner to which the ALJ gave "little weight." *See Lohmann v. Colvin*, No. 12-CV-964S, 2014 WL 1686822, *3 (W.D.N.Y. Apr. 29, 2014). In contrast, Dr. Inman-Dundon's opinion did not rely exclusively upon Dr. Shapiro's opinion but rather relied upon a combination of Dr. Shapiro's findings, Dr. Lorensen's findings, Plaintiff's

medical records, and Plaintiff's reported daily activities.  *See* AR at 517-19, 522, 525, 530-31, 535, 538.  Additionally, in *Lohmann*, the court characterized the ALJ's assignment of "little weight" to the consultative examiner's opinion as a finding that the opinion was "insufficient."  *See Lohmann*, 2014 WL 1686822, at *3.  That is unlike what occurred in this case, where the ALJ explicitly gave Dr. Shapiro's opinion "partial weight," which can hardly be compared to the ALJ finding Dr. Shapiro's opinion insufficient or rejecting it.  Thus, the Court finds Plaintiff's reliance on *Lohmann* unpersuasive.

Furthermore, although the ALJ did not afford Dr. Shapiro's opinion "great" or "controlling" weight, it is clear that she took it into consideration and incorporated parts of the opinion into her RFC finding.  Many of Dr. Shapiro's findings, such as Plaintiff's normal demeanor and responsiveness, normal social skills and presentation, normal appearance, fluent speech, coherent thought process, normal affect, normal attention and concentration, mildly impaired memory, normal cognitive functioning, normal daily functioning support, are at the very least consistent with the ALJ's mental RFC finding.  *Compare* AR at 105 (stating RFC finding that Plaintiff is limited to simple routine and repetitive tasks, should work at a low-stress job doing goal-oriented tasks instead of production pace rate work, and, at most, should have only occasional contact with supervisors, coworkers, and the public), *with* AR at 909-10 (describing and explaining Dr. Shapiro's examination findings).  As such, the mere fact that Dr. Inman-Dundon's opinion, to which the ALJ gave "great weight," relied in part on Dr. Shapiro's examination findings, to which the ALJ gave only "partial weight," does not constitute error.  *See Cook v. Comm'r of Soc. Sec.*, No. 18-CV-0726MWP, 2020 WL 1139909, *4 (W.D.N.Y. Mar. 9, 2020) (stating that "[a]n ALJ does not necessarily 'reject' opinion evidence when the opinion is assessed less than controlling weight and where, as here, it is evident that the ALJ's RFC

determination incorporates limitations contained in that opinion" (citations and footnote omitted)); *Bockeno v. Comm'r of Soc. Sec.*, No. 5:14-CV-0365 (GTS), 2015 WL 5512348, *5 (N.D.N.Y. Sept. 15, 2015) (stating that "the ALJ did not outright reject [the physician's] opinion" by giving it "little weight" where the RFC finding included some limitations that were consistent with that opinion and was supported by other evidence of record). Instead, it shows that the ALJ was simply choosing between two properly submitted medical opinions to resolve conflicting evidence, as she is permitted to do. *See Christina M. v. Saul*, No. 3:18-CV-0332 (CFH), 2019 WL 3321891, *6 (N.D.N.Y. July 24, 2019) (stating that "[i]t is within the ALJ's purview to resolve any material conflicts in the evidence and various opinions of record" (citing *Bliss v. Colvin*, No. 13-CV-1086, 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015))). The question here is whether the ALJ's assignment of weight is supported by substantial evidence, not whether this Court or another ALJ would have weighed the competing medical opinions differently or reached a different conclusion. *See Michelle M.*, 2020 WL 495170, at *8 (citations omitted); *Clark*, 2016 WL 1057047, at *6 (quotation omitted).

Accordingly, the Court finds that Dr. Inman-Dundon's opinion is supported by substantial evidence and that the ALJ did not commit error by assigning "great weight" to that opinion.

### (iii)    Dr. Shapiro's opinion

With regard to Plaintiff's argument that her regular attendance at appointments does not necessarily indicate she can sustain a work routine, the case Plaintiff cites in support of that proposition is distinguishable. In that case, the ALJ primarily relied on the plaintiff's regular attendance at medical appointments to discount a physician's opinion, whereas here, Plaintiff's attendance at medical appointments was just one of several reasons on which the ALJ relied to afford partial weight to Dr. Shapiro's opinion. *Compare Fountaine v. Comm'r of Soc. Sec.*, No.

18-CV-6033-JWF, 2019 WL 1428522, *3-*4 (W.D.N.Y. Mar. 29, 2019), *with* AR at 107 (discounting Dr. Shapiro's opinion because it was based on a one-time examination, plaintiff regularly attends appointments, and there is no evidence of record that indicates that Plaintiff cannot maintain a routine[4]).  Additionally, in *Fountaine*, the ALJ discounted a treating physician's opinion, which are usually entitled to controlling weight, whereas here, Dr. Shapiro is a consultative examining psychologist, whose opinions are not usually entitled to controlling weight.

Moreover, this Court recently rejected the same argument from a plaintiff who also cited *Fountaine* for the proposition that it is improper to rely on a plaintiff's regular attendance at medical appointments to discredit a physician's opinion that the plaintiff has limitations in her ability to maintain a schedule.  *See Tracie P. v. Comm'r of Soc. Sec.*, No. 3:19-CV-837 (FJS), 2020 WL 2309082, *8 n.5 (N.D.N.Y. May 8, 2020) (stating that plaintiff's ability to regularly attend medical appointments is relevant to show that she is capable of maintaining a schedule). In *Tracie P.*, the Court further justified the ALJ's departure from the physician's opinion that the plaintiff's ability to maintain a schedule was limited by noting that the ALJ accounted for the physician's concerns by "'restricting [Plaintiff] to simple tasks performed in a reduced-stress work environment.'"  *See id.* at *8 (quotation omitted).  This is noteworthy because here, as in *Tracie P.*, the only limitation that Dr. Shapiro assessed from which the ALJ strayed is that Plaintiff has moderate limitations in attending a routine and maintaining a schedule, and the ALJ addressed this concern by finding that Plaintiff is "limited to simple, routine and repetitive tasks"

---

[4] It is also entirely proper, independent of any other reasons, for the ALJ to give an opinion less weight or reject an opinion based on the opinion's "inconsistency with, or lack of support from, the evidence."  *See Kim S. v. Comm'r of Soc. Sec.*, No. 1:17-CV-0926 (DJS), 2018 WL 5792759, *6 (N.D.N.Y. Nov. 5, 2018) (citations omitted).

and "should work in a low-stress job." *See* AR at 105.  Thus, the Court finds that it was proper

for the ALJ to rely on Plaintiff's regular attendance at medical appointments as a reason to give

Dr. Shapiro's opinion less weight.

On the other hand, Plaintiff correctly argues that the ALJ applied a double standard by

discounting Dr. Shapiro's opinion in part for being based on a one-time examination while giving

great weight to Dr. Lorensen's opinion in part for being based on an examination of Plaintiff.

Defendant's purported explanation for why it was proper for the ALJ to apply this factor

differently to the two opinions is unpersuasive.  Although Defendant may be correct that this

factor can "cut both ways" depending on whether the one-time examiner's opinion is being

weighed relative to a non-examining doctor's opinion or a treating doctor's opinion, that rationale

does not apply here.  *See* Dkt. No. 9 at 10 (citing 20 C.F.R. §§ 404.1527(c)(1)-(2),

416.927(c)(1)-(2)).  Rather, in this case, Dr. Lorensen's opinion, to which the ALJ gave great

weight, and Dr. Shapiro's opinion, to which the ALJ gave partial weight, were both being

weighed relative to the opinions of non-examining doctors.  *See* AR at 106-07.  Thus, the ALJ

committed error by failing to apply this factor consistently when weighing both Dr. Lorensen's

and Dr. Shapiro's opinions, especially in light of the Social Security Regulations, which indicate

that non-examining source opinions generally receive less weight than examining source

opinions.  *See* 20 C.F.R. § 404.1527(c)(1).

Nonetheless, the Court finds that the ALJ's error in this regard was harmless because it is

unlikely that the ALJ's RFC determination would have changed had she properly weighed Dr.

Shapiro's opinion, especially considering the fact that most of Dr. Shapiro's opinion is both

consistent with and incorporated into the ALJ's finding.  *See Howell v. Berryhill*, No. 6:17-CV-

06568 (MAT), 2018 WL 3429278, *5 (W.D.N.Y. July 16, 2018) (finding that the ALJ's failure

to explicitly assign a weight to a physician's opinion was harmless error because the ALJ

discussed and analyzed that opinion and most of the opinion was consistent with the ALJ's

finding (citations omitted)); *Pearlie T. v. Saul*, No. 19-CV-0271L, 2020 WL 7395357, *3

(W.D.N.Y. Dec. 17, 2020) (finding that even assuming the ALJ erred by not giving the

consultative physician's opinion greater weight, "such error would be harmless, as the RFC

determined by the ALJ was entirely consistent with the minimal limitations in simple directions

and simple tasks, and moderate limitations in attention and concentration, schedule-keeping,

learning new tasks, performing complex tasks independently, decision-making, social

interaction, and stress that [the consultative physician] opined" (citation omitted)); *Blabac v.

Comm'r of Soc. Sec.*, No. 3:08-CV-0849 (GLS/VEB), 2009 WL 5167650, *9 (N.D.N.Y. Dec. 18,

2009) (finding the ALJ's failure to give opinion greater weight was harmless error and stating

that the ALJ's failure to weigh an opinion is harmless error where the opinion is consistent with

the ALJ's findings and assigning greater weight would not change the outcome (citations

omitted)).

Accordingly, the Court finds that any error the ALJ committed in weighing Dr. Shapiro's

opinion was harmless and, therefore, remand is not required.

### (iv)    <u>Dr. Leong's opinion</u>

With regard to Plaintiff's challenge to the ALJ's assignment of partial weight to Dr.

Leong's opinion, her arguments fail.  Plaintiff initially challenges Dr. Leong's opinion on the

grounds that she was not a specialist and did not examine Plaintiff; however, there is no legal

authority that prohibits an ALJ from relying on the opinion of a non-specialist, non-examining

physician.  Indeed, the Social Security regulations specifically indicate that an ALJ may rely on

such opinions and merely dictate that the ALJ must take the physician's non-specialist or non-

examining status into consideration while weighing the opinions.  *See* 20 C.F.R.

§ 404.1527(c)(1), (5) (stating that examining source opinions generally receive greater weight

than non-examining source opinions and specialist opinions generally receive greater weight

when discussing the specialist's area of expertise than non-specialist opinions).  That is precisely

what the ALJ did when she explicitly cited the fact that Dr. Leong did not examine Plaintiff as

one of several reasons for only affording Dr. Leong's opinion "partial weight."  Moreover,

assigning partial weight to Dr. Leong's opinion is consistent with the general rule that non-

specialist opinions receive lesser weight than specialist opinions.  *See* 20 C.F.R.

§ 404.1527(c)(5).

Additionally, Plaintiff's arguments that Dr. Leong did not discuss any treatment notes

after December 8, 2017, and did not review all probative evidence of record, including treatment

notes obtained from AHA addressing her spondyloarthropathy, are unavailing.  As discussed

above, the mere fact that additional medical records were added to the administrative record after

an opinion was rendered does not make such opinion unreliable.  *See Vicky K.*, 2020 WL

1975129, at *4 (citation omitted); *Liberatore*, 2016 WL 7053443, at *7 (citation omitted).

Moreover, Plaintiff has not established that any of the subsequent AHA records show that her

condition or symptoms have deteriorated or cited to any specific portion of the AHA records to

show how consideration of those records might have changed Dr. Leong's opinion.  Likewise,

Plaintiff's argument that Dr. Leong did not review "all probative evidence" is also unpersuasive

as it is conclusory and does not point to any specific portion of the administrative record that Dr.

Leong failed to consider other than the AHA records in general, which account for just 35 pages

of the 1408-page administrative record. *See* AR at 1319-53.  Therefore, the Court rejects these

arguments. *See Vicky K.*, 2020 WL 1975129, at *4 (citation omitted); *Liberatore*, 2016 WL 7053443, at *6 (citation omitted).

Furthermore, the Court rejects Plaintiff's arguments that Dr. Leong did not identify medically determinable impairments or a diagnosis or treatment for spondyloarthropathy. Plaintiff has not identified any legal authority indicating that an opinion is unreliable solely because the physician rendering the opinion did not identify a diagnosis or treatment for one of Plaintiff's alleged impairments when summarizing the available medical records. Plaintiff has also failed to indicate how Dr. Leong's opinion would have changed had she explicitly discussed or identified a diagnosis or treatment for spondyloarthropathy. Similarly, Plaintiff has not identified any legal authority indicating that Dr. Leong's opinion is unreliable or should be rejected based on a failure to explicitly identify Plaintiff's medically determinable impairments.

Dr. Leong explicitly summarized medical records ranging from March 10, 2014, through December 8, 2017, and based on a review of the records, rendered an opinion on Plaintiff's physical RFC that the ALJ found was generally consistent with Dr. Lorensen's opinion. Therefore, it is apparent that Dr. Leong was aware of all of Plaintiff's impairments from reviewing the record. Given that an ALJ's RFC need not perfectly correspond with one single medical opinion and that the ALJ relied on several different opinions, the omissions of Dr. Leong that Plaintiff notes do not necessarily make the ALJ's reliance on Dr. Leong's opinion reversible error. *See Matta*, 508 F. App'x at 56; *Samantha S.*, 385 F. Supp. 3d at 184-85. This conclusion is further underscored by the fact that, (1) after reviewing other medical evidence and opinions, the ALJ addressed Plaintiff's alleged spondyloarthropathy when explaining her RFC

finding,[5] *see* AR at 107; and (2) Dr. Leong cited to extensive medical evidence to support her opinion on Plaintiff's physical RFC, *see id.* at 1216, 1222.

Finally, Plaintiff's argument that the ALJ committed error by failing to specify why she assessed a more limited RFC than Dr. Leong found is unpersuasive.  In her brief, Plaintiff plainly acknowledges the ALJ's explicit statement that Plaintiff was "given somewhat greater limitations" than Dr. Leong's opinion found in part because Plaintiff testified that "she [was] frequently out of breath."  *See id.* at 107.  Therefore, not only did the ALJ explain, at least in part, why she assessed a more limited RFC than Dr. Leong, but also the ALJ's reasoning was based on the ALJ crediting Plaintiff's testimony about her breathing limitations, which is favorable to Plaintiff.  In addition, as discussed above, the ALJ's RFC finding was supported by substantial evidence, which included Dr. Leong's opinion.  However, even assuming *arguendo* that the ALJ's explanation for the more limited RFC was not sufficiently specific, Plaintiff has failed to cite any evidence in the record that establishes that her RFC should be more limited than the ALJ found.  *See House*, 2016 WL 4275732, at *10 (stating that "[i]t is the burden of the claimant . . . to establish the facts necessary to include limitations within an RFC" and finding that the ALJ "was not obligated to prove a lack of limitations" (citations omitted)).  Therefore, even if the ALJ did commit error by failing to explain more specifically why she assessed a more restricted RFC than Dr. Leong, that error was harmless.  *See Nesevitch*, 2016 WL 5717270, at *16 (finding that any error the ALJ committed by relying on physician's opinion was harmless because the ALJ assessed a more restricted RFC than the opinion proposed); *Shorter*, 2014 WL 1280459, at *10 (finding that, "[i]n light of the other substantial evidence in the record

---

[5] The ALJ cited to medical records, not Dr. Leong's opinion, when addressing Plaintiff's spondyloarthropathy; and there is nothing in the record indicating that the ALJ relied on Dr. Leong's opinion to evaluate Plaintiff's alleged spondyloarthropathy.  *See* AR at 107.

supporting the ALJ's RFC determination and the fact that the RFC determination is actually more restrictive than [the state agency consultant's] assessment, any error in considering this report was harmless").

Accordingly, the Court finds that the ALJ did not commit error by assigning "partial weight" to Dr. Leong's opinion because it is supported by substantial evidence.

## IV. CONCLUSION

After reviewing the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings, *see* Dkt. No. 8, is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings, *see* Dkt. No. 9, is **GRANTED**; and the Court further

**ORDERS** that the Commissioner's decision is **AFFIRMED** and Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: March 29, 2021
        Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Judge